Your Honor, the first case on the docket this morning is 2-19-00645 Garrett B. Schlappi v. A. Schlappi, S. Al. plaintiff, v. Jeremiah v. Finnestad, N. Al. defendant. Your Honor, Jeremiah v. Finnestad, S. Al. plaintiff, v. A. Schlappi, N. Al. defendant. Your Honor, the defendant, M. B. Ghassan, S. Al. plaintiff, v. Jeremiah v. Finnestad, N. Al. defendant. Gentlemen, are you both prepared to proceed? Counsel, then when you're ready. May I have the court's order? Of course. Justice, good morning. Counsel, good morning. My name is Muhammad Nofl, and I am the attorney for the appellants in this case. This is a case that revolves around contribution claims following settlement. A case that involves a motor vehicle accident between my clients and the counter-defendant, Deborah Schlappi. A case where the counter-defendant had four passengers in her vehicle, and those passengers were part of a settlement discussion where the court had a pretrial conference. What were the terms of that agreement? I'm sorry, Judge? What were the terms of the oral agreement? The oral agreement was the defendant was going to tender their policy for a release on behalf of the defendants, as well as a release on behalf of the counter-defendant in order to preserve the counterclaims. And as part of that agreement, we tendered releases to the plaintiffs, the plaintiff, Gary Schlappi, the plaintiff, Deborah Schlappi, the plaintiff. But Ms. Kelsey didn't agree to that, correct? That's correct. Ms. We are not seeking contribution against Deborah Schlappi for Kelsey Longfellow's injuries. We are only seeking contribution for the injuries related to three plaintiffs. Gary Schlappi's injuries, Mikayla Schlappi's injuries, and Abigail Schlappi's injuries. Those three plaintiffs signed releases, which are part of the record, pages 1401. And your position is that that was made clear in the oral agreement? That is correct, Judge. Okay. As indicated in my bystanders' report, that was made clear in the oral agreement not only then, Your Honor, but we do have signed releases from those three plaintiffs that specifically release an extinguished liability of Deborah Schlappi. But not as it relates to the Longfellows? Not as it relates to the Longfellows. But can you parse out the contribution obligations like that? We can, because we are not seeking contribution against Deborah Schlappi for the Longfellows. The Longfellows release specifically did not extinguish Deborah Schlappi's liability. But if Deborah's liability is not extinguished as it relates to all the possible plaintiffs, can you see contribution against her? I can. On a partial settlement? Correct. I can see contribution. My right of contribution is related to only the claims of the three plaintiffs that signed releases extinguishing her liability. And that's consistent with the illicit Supreme Court case of Dubina v. Miserable v. Realty, which is 197 Illinois 2nd, 185. That case is favorable to our defense. It's favorable to our case. That case identified that in order to extinguish the liability and have a claim for contribution, you must name the party in your release. And that's what we did in this case, Your Honor. In that case, were all the defendants released? They were not. One defendant was not released. And so what happened in that case, Judge, the selling defendants had an agreement with the plaintiff. And their agreement was to assign the plaintiff's claim against the non-selling defendant to the selling defendants. The selling defendants then prosecuted their case against the non-selling defendant. The non-selling defendant appealed and said that's not proper. And the Illicit Supreme Court case agreed. That case mentioned they did not preserve their claim for contribution. In that case, the one-ring defendant was not named in that release. So then your position is that that claim is still pending, that action is still pending because the court didn't specifically rule on it. That's correct. My contribution claim was virtually dismissed. It should have been remaining pending. The law allows me to file a claim for contribution, but I must release the other tortfeasor. That's clearly in the case law. That's clearly in the Illicit Contribution Act, Section E, that I must name the released tortfeasor. And that's what we did in this case. This Illicit Supreme Court case gives us a guideline of what to do. When you couple that with the Illicit Contribution Act, I must release the tortfeasor, and that's what we did. We've identified- Does the Tortfeasor Act mention good faith? It does. Section C, 740, Illinois, 100, ILCS-100-2, Section C, talks about getting a release in good faith. Section E talks about you cannot have a claim of contribution unless you release or extinguish the other tortfeasor, and that's what we did in this case. We've released and extinguished the other tortfeasor. So our claim has been preserved. What about Judge McCann? As I read the transcript from, I think it was January 17th ruling- That's correct. I know it's not entirely clear, but when I look at it, it seems to me that Judge McCann reached the conclusion that all he could recall and what made sense in the context of everything he went through was that there was not an agreement, except as it relates to the township defendants and the plaintiffs. So I suggest I'm correct, Your Honor. Judge McCann did not make any rulings on the contribution claims. When I filed my motion for good faith finding, I asked for four things, a good faith finding, extinguishing the defendant's liability, finding that the common liability of the settlement is between the defendants and the counter-defendant, and finally, preserving my counterclaim. Judge McCann only ruled on the first one, the only fine of good faith finding. He didn't dismiss the claims against my clients. He found no common liability. What he said was, I'll address those in further pleas. In that argument, if I recall, you took the position that the Longfellows could not have settled the case with respect to Deborah because that case was extinguished. I think you took that position in front of Judge McCann, and that seems inconsistent with the position you're taking now. No. At that point, I never said that I wasn't going to – that I conceded the Longfellow. At that point you took the position that it was improper for them to settle it because it had been extinguished. I took – that's correct. I took the position that all the Schlappys, since I settled on behalf of the Schlappys and on behalf of the township, I've extinguished Deborah Schlappy's liability. She had no standing to settle her other claims because I already settled on her behalf to preserve my claim for contribution. Is that not inconsistent with what you argued a few minutes ago? It is not, Your Honor, because I'm able to extinguish the liability of the counterdefendant in order to preserve my claim for contribution. The issue with Longfellow is her issue, they did not want to – I did not extinguish her liability on that case. Longfellow – I'm not seeking contribution for Longfellow's injuries. These are separate claims on four different plaintiffs. Each plaintiff has their own separate claim. Each plaintiff has their own separate lawsuit. I was able to extinguish the liability of three of the plaintiffs with respect to the counterdefendant. Longfellow is a separate issue. I've paid Longfellow. She signed the release. I'm not seeking contribution for Longfellow's issues. I'm seeking contribution for the three remaining Schlappy plaintiffs. So moving forward, that's consistent with the case law. That's consistent with the rulings of the Ownership Contribution Act. What other actions could I have taken to preserve my claim for contribution? I'm able to settle and peace out the different plaintiffs in this case, and that's what we did here. We were able to do that. One of the things I'm really troubled by is that it appears that Judge McCann did not recall the agreement as you believe it was. So, um, here's the dilemma. You're saying, look, here's what we agreed to. Here's what we did. Here's what we offered. Here's what we were to get in return. That was the deal. Everybody accepted it. But he recalls it, he being Judge McCann, recalls there was nothing else. It was simply you were tendering the full extent of the policy. The plaintiffs accepted it, and that was that. And that was it, done, four corners, no more, no less. If you read the transcript of proceedings in the January oral argument, he never discusses of what was said during the pretrial. He never says, here's what I recall. Not once does he say, here's what happened. I mean, isn't that implicit in his bottom line? I don't think so, because we have now, despite of what Judge McCann said, I have signed releases from the plaintiffs indicating, yes, they are releasing the liability of the defendants and counter-defendants. So despite what Judge McCann's ruling is, I have now signed releases at that time. I have signed those. What was the written ruling from Judge McCann? Does he? Judge McCann simply said, on my motion for good faith finding, that he'll find a good faith finding, period. Didn't extinguish my liability, didn't preserve contribution claim, didn't rule on those issues. He said, we'll address those in further pleadings. If you read the transcript, he clearly says, we will address those in further proceedings, never rules on the other issues I requested on my good faith finding motion. And despite what he recalled, doesn't recall, it makes no difference. I have signed releases from the plaintiffs pursuant to the law that I need to follow to preserve my contribution claim that I've released Deborah Schlafly's claim. In order for me to do that, I need to preserve my contribution claim. That's what the Dubina case says. But did Deborah ever agree to be a part of the township settlement? I don't need Deborah to agree to for me to settle the claim. At no point do you do not. I agree with that. Yes. That's clear under the law. But you do need the Longfellows to agree, don't you? I don't need Longfellows to agree. Why? Longfellows. Because of the Miserra case. Correct. The Longfellows, not only that, but the Miserra case and the cases that follow that law, as well as the Contribution Act. Longfellow had a separate independent lawsuit, a separate attorney, and no different than to a separate case, different case number, different caption. He's a separate plaintiff. I can settle with separate plaintiffs and preserve my contribution claim, and that's what we did. I preserved it on three of the plaintiffs. I did not preserve it for Longfellows. That was part of the agreement. So what was the significance of all the parties being, including the Longfellows, being in the settlement conference? So at that point, we turned our policy for all of them. And as a group, they accepted it. They came back and said, here's how we're going to identify the amounts. They came back and said, OK, we're going to X dollars for this party, X dollars for that party. And then from there, Longfellow did not want to release Deborah Schlappi. We accepted that. The Schlappis were going to release the current defendant. You accept it now, but you didn't accept it in front of Judge McCann. No, I did. In front of Judge McCann, I had the release for the Longfellows. Right, but you did not accept it. You're taking the position now that you did not extinguish. You're fine with not having extinguished the Longfellow, Deborah's liability under the Longfellow case. But in front of Judge McCann, you took the opposite position. Well, at that point, we did not have a full, again, so we have a January hearing, releases signed, checks issued, checks sent out, checks cashed. Then we have a June hearing where there was further proceedings. By the time the June hearing came through, initially during the January hearing, it was our position that we want extinguishing everybody. But then after that, Longfellow said they don't want to do that, and we agreed to it. So after the hearing, we took the position that's fine. We'll go ahead and just agree to not extinguish the Longfellow, but move forward with the release that I've already had. So where is the evidence of a settlement agreement between Deborah and the plaintiffs? Deborah and the plaintiffs? Mm-hmm. Yeah. I'm not aware of a settlement agreement between Deborah and the plaintiffs. Well, didn't she pay? Deborah did not pay anything. Well, didn't she pay? She settled under, she settled with the Longfellows and her own children. They received monies from the $50,000 policy. I have not, there is no, nothing on the record, nobody's finding on behalf of Deborah for any settlement. I'm not aware of a settlement. I've heard rumors of a settlement. Nothing in this record here that identifies that Deborah Schlappi settled with the plaintiffs or her family members. There was nothing on the record, nobody's finding to extinguish those claims. Well, there was a representation made by an officer of the court to the judge in June as it relates to that. That's correct. He stated that there was a settlement, and I questioned that. I have seen nothing. I've seen no releases. Nobody's finding motion. And it's my position that they had no authority or no standing to settle because. But now you're being, that's inconsistent again. Which is it? No, no, it is. Because you cannot, when I extinguished liability. But you took the position, this is what's confusing me. Maybe under one of your theories it's irrelevant either way. But which is it? You extinguished the liability or you didn't? I think we need to separate the plaintiffs. With respect to Kelsey Longfellow, it's our position that we are not seeking contribution from Deborah Schlappi for Kelsey Longfellow's injuries. We can close that chapter. With respect to the other three Schlappi plaintiffs, Deborah Schlappi had no authority to settle directly with those plaintiffs since her liability was already extinguished from my settlement. So that's not inconsistent with our position. I've always taken the position that you cannot settle Deborah Schlappi's claims because I've already extinguished her liability. In order for me to preserve my contribution claim, I needed to extinguish her liability. Which was a case law, which was a contribution act. If I didn't do that, then I'm in the same position that the oldest Supreme Court case. May I finish my thoughts? Yes. I'm sorry. That's okay. I'm in the same position that the Dubina case is in, where they did not extinguish her liability, and they were not do not preserve their contribution act, and they weren't able to move forward with their case. I had to extinguish her liability. And once I did that, she had no authority to settle any further. And I've cited a case law that does say you can't have a subsequent settlement after you've already solved another case. So your position is that she had no authority to settle as it relates to her own children, but she could with respect to the Longfellow? Absolutely correct. That's absolutely our position, Judge. Thank you. All right, counsel, you'll have an opportunity to reply. Thank you. Your Honors, Mr. Nafal, thank you for the opportunity to be before you and argue this most interesting case. The issue before you is what was said during that pretrial settlement conference. What were the terms of the agreement? The terms of the agreement were, we, the defendants, offer our policy, our $3 million policy and resolution of this matter. Almost immediately, the attorneys for the plaintiff stood up literally and said, we agree. And that was the extent of the conversation. That was the settlement offer. That was the settlement acceptance. After that, literally, the attorneys, the plaintiffs, and myself went into the parking lot. And I said to them, on the premises, in the parking lot, we have been attempting to settle this aspect of the case for, since we got into it, almost three years. What aspect of the case? The claim for contribution brought by Mr. Nafal in this case. The second I got in the case, I called plaintiff's attorney and said, hey, we're brought in. Can we settle this directly with you? We have a $50,000 policy. There is no liability. Can we give you a nuisance value so we don't have to spend exorbitant amounts of money defending this highly complex, multimillion-dollar case? And as a tactical decision, I say a bad one, plaintiff's attorney said, no. We're going to have you as a second attorney beating up on Mr. Nafal. When they released the Longfellow plaintiff and the new plaintiff's attorney for Longfellow came into the case, I immediately called him and said, can we settle this claim for contribution now so that we don't have an issue? With a $3 million settlement, even if a jury was to find Ms. Schwampe 5% at fault, which we've always contended there's no liability whatsoever. The snowplow pulled from a stop sign right in front of us, boom, we hit that. But even at 5%, if I do the math, that's $300,000 at 10%, that's $150,000 possible judgment at just 5%. We won it. And the entire time, we were attempting to settle with these plaintiff's attorneys directly. They didn't want to do it. And so what Mr. Nafal will have you believe, that at that pretrial settlement conference, what was stated was, we offer $3 million, and we get to continue to go after Deborah Schlappi for our amount in excess in that $3 million settlement. And he will have you believe, Judge, that the plaintiff's attorneys, that myself, sat there and shook our head and said, that's a good idea. We knew from the beginning the extent of possible liability if it went south on us. And again, we contended that there was no liability whatsoever. We filed a motion for summary judgment, which was denied. That's what we were dealing with. We spent defense costs. We spent an exorbitant amount of money on this just because of the complex nature of the case, the seriousness of the injuries. And so that's what they'll have you believe. And now, for the first time, I'll tell you, members of the panel, I learned just 10 minutes ago that Mr. Nafal is now taking the position that he is not going after the Longfellow aspect of the claim for contribution. Was that discussed during the pretrial negotiation? No. Was that discussed during any of the hearings of this matter? No. Was that discussed during any of the status meetings? No. Your honors, was that even discussed in any of the briefs that was presented to you that you read here today? No. Why are they taking that position now at the last minute going, oh, I get it. We're not seeking Longfellow? Because that destroys their case. Well, how about the settlement agreements that he has signed? The releases? The releases. The releases. Well, that's really a red herring because the issue is, what was the offer and acceptance? Now, they do have the offer and acceptance? No, it's not. And the Rose case, I believe, says that the judge is the one. And in this case, the judge actively participated in that contentious pretrial settlement notice. He was there. But did he approve the settlement subsequently? He did approve the settlement. And he said it. And that's in R32 through 33. He phrased it as to the motion for good faith. And he said, I'm entering an order approving a good faith finding as to the township and Finistead only. That is the judge's direct words. That's on R32 through 33. So you did a good job. So is it your position that we got you off your train of thought? You did, but that's OK. I was complimenting you. I didn't. Well, please continue. Now, I forgot my question. OK, well, proceed. Well, while Judge Jordan is thinking of her questions, I have one. Can I ask you, counsel, Dabena versus Miserow, do you agree with Mr. Knowful that you can extinguish the liability of some of the plaintiffs, or you can distinguish the defendant's liability with respect to some of the plaintiffs, but not all of the plaintiffs, and seek contribution against those that you have not extinguished? That is true. It's a statement of the law. It's a correct statement of the law. That is a correct statement of the law, and that's the defendant's position. It's your position. That's not what happened here. You got a position to try and settle, and you can do it piecemeal in that fashion. But that's not what the situation here is in this case. He's now, after filing his brief and never mentioning the Longfellow problem in that brief, he's now trying to fit the facts into the law, and it's the puzzle piece that doesn't fit. Here's the other thing. If he was so concerned about these releases, you know, hey, I got a release that's signed, and that's where I was talking about, the releases that we do have that extinguish the liability, who knows what those releases say? You have, and I included them in my brief, you literally had a plaintiff's attorney who had his client sign a release, presumably, for his case was worth $2 million, in excess of $2 million, $2,075,000. He had his client sign a release for $2,075. I don't know what was going on there. I wasn't included. I would have loved to instruct my clients not to sign those releases. I wasn't afforded that opportunity. Did Deborah settle? Deborah did. Deborah, through her insurance company, we did settle. The two plaintiffs that had the biggest injuries, Longfellow and the husband, they settled for $5,000 apiece. And the two minor plaintiffs with the lesser injuries settled for $2,500 apiece for a total of $15,000. And then the debate comes up, well, $15,000, that if you compare it to $3 million, that it's not comparable. But when you compare 100% liability to 0% liability, which was our contention all along, we paid infinitely more than the case is worth comparable to our issue. But again, back to those releases. If Mr. Nafalt was so concerned about those releases and some extinguish liability, some don't, he had the ultimate control of what was going to happen at that time. How? He held the checks. He held those $3 million worth of checks to the various parties. And what did he do? He paid them. He paid them. And now, because he did pay that, when he could have withheld that, he could have gone back in the court and said, whoa, whoa, whoa, wait. We're talking two different things. Something's not right. And we could have figured that out in the lower court. It's now been dumped on all of us and you. But he paid the check and, oh, we'll work it out later. So that's where we are. So you're saying if he believed there was a dispute as to what the total terms of the agreement were, his remedy was to go back to Judge McCann and say, wait, wait. Here's my $3 million. I'm willing to pay. But. But. And there was none of that. So if you take out that timeline and you divvy out the facts as to what's going on, absolutely. He didn't have any obligation. So your recollection is that there was no mention of this contribution claim. Do we assume from that that it was resolved? Or do we assume from the lack of mentioning that it's dismissed that it isn't? And here's the thing. This case is all about the timeline and what happened. And so you have the pretrial. We offer our $3 million. That's it. So what then do you have? You have a direct complaint, because Longfellow, in fact, did sue me directly. So you have that. You have the claim for contribution. Literally, in the parking lot, we go out there and. But that's not in the record. That is not in the record. And if I could have taken the court reporter services and brought it out into the parking lot, I could have done that. But you're right. But that's the timeline as it's done. And so that's how it was extinguished. So then comes the follow-up motions, the motion for good faith. That's granted. And it's granted as to Township and Finistad only. And so what that only leaves, then, is the one sole remaining defendant. So does the law require a good faith binding on that one sole defendant? Excellent question. The answer is no. If you have one plaintiff and one defendant in a general lawsuit, and you settle, you're not required to go in and say, judge, is this good enough, unless it's. Can I ask a timeline question? Because I understand your position as it relates to the releases. But I want to ask about the specific order that Judge McCann entered on 11-27-18. The handwritten order, I don't know, I presume it was one of the lawyers that wrote it, and not Judge Nipaul. It was Mr. Nipaul, yep. But I presume the lawyers looked at it. And it says, specifically, the third party claim for contribution to remain pending. So it's not just the releases. It's also that order. What say you there? Overlooked. It was an unfortunate circumstance by me. I was the one that had the duty and obligation to make sure that that was done. But just as a release, that's not the contract. That's not the agreement. The agreement is what took place in that order. The question is whether Judge McCann abused his discretion in terms of his recollection of the agreement. And we can look to this to try to figure out the question you have to answer. That's an excellent point. And I didn't want to forget this, so I thank you for reminding me of this. Judge McCann, if you had a situation where he had every opportunity to look at me and go, I'm sorry, I'm going to find it against you, it was this case. Because what did I do at that hearing? What did I say to Judge McCann? Which hearing are you? I'm sorry? Which one were you? That was the January 17th, 2019. And it's emboldened my brief, and that's R16, emphasis added, where I literally said to him, at the pretrial, which you obviously were a part of, at no point did we, at no point when we were in the room, when the $3 million offer was made, did I hear the words, and Deborah Schlappi. I may have misheard it. I just misheard 30 seconds ago you listing off names and motions that you received. I didn't hear that. Here's the part I want to point out to you. You were there. In other words, the Judge McCann was there. You were there. I'll leave that in your more than capable ears. But doesn't the written order control? And if not, why not? The judge can find that it doesn't. Just as case laws out there that if there's a pretrial and the releases, the judge can overrule those releases. And so the agreement is in that back room. And it'd be great. Right, right. That's a little different than a release. A release is not in that back room. A release is afterwards at some lawyer's office. But the order was prepared in the courtroom as a result of a conference. But if you compare the release to the order, I would say that the release, a signed release, is even worse, so to say, than the order. I don't remember the exact time period as to how long we were in that pretrial settlement conference. It was a long day. It was a contentious pretrial. We were happy to get out of there. Plaintiffs' attorneys rejoiced. They just had a $3 million settlement. And the release, time has transpired. You're back at your office. And you have the time to review the release. I'll admit it. And that's part of the problem. It was overlooked. But that doesn't seal the deal. What seals the deal in this case is what was the agreement in that back room, what was agreed to by the parties. And in fact, one of the attorneys, not myself in open court, considered that order kind of sneaky as to what happened. Because it was inserted. It certainly wasn't discussed. It certainly wasn't, hey, I have this in the order. But that is my fault. So here's the bottom line. Do we go by Judge McCann's recollection, or do we look at the written documents? You look at the case law and unless. Now, that's not one of my options, just to be clear. You look at what Judge McCann's recollection is. Because he was a witness to this. He was a part of this. He was a participant in this. This wasn't a 15-minute pretrial. He was dealing with other things. He was literally in that room when the offer and the acceptance was made. And again, if you just do the timeline, if you do what the facts are in this case, it's the only reasonable explanation to the parties' actions. So the bottom line, it was $3 million. That takes care of everything. That was the bottom line. That was what was offered. And your position is that that's the way Judge McCann recalled it, although he was a little cryptic in his transcript or in the transcript. That's your position. That's my position. And I think R32 through R33 indicates, again, he didn't say, I find the settlement to have been between the plaintiffs and the township only. He phrased it in, I find the good faith. Only with those two defendants. Only with those two defendants, correct. Thank you very much.  Thank you. Counsel, do you wish to reply? No. What we heard right now is, I overlooked the November 27-18 order, and I overlooked the releases. The November 27-18 order, at the bottom left-hand corner, is signed by the other parties. Not the counter-defendant's order, though. A counter-defendant left the courtroom. So it's not signed. Yeah. It's not signed by him. What I recall was, he said, oh, that's fine. I'm leaving. So it's not signed by him. It was sent to him afterwards. The releases were also sent to him for review. So these are consistent. The November order and the December releases are consistent. The November order preserves the contribution claim. The releases preserve the contribution claim. Those are consistent releases, consistent orders. There's nothing inconsistent with that position. My counsel seems to think that Judge McCann's recollection, if it's different, it trumps. It does not trump. Look at the documents that the parties agreed to. The parties of the parties of the parties agreed to. Well, we just established that the counter-defendant did not sign that. Did not sign the order? Correct. The counter-defendant doesn't need to sign the order. The counter-defendant was there. But didn't review the order. And isn't that really the crux of the dispute here? The counter-defendant should have filed a motion to clarify the order, which he never did. He had a copy of the order that was sent to him after the November 27 date. He had a copy of the release sent to him after the November 27 date. At no time did the counter-defendant file a motion to clarify the order. Even during the hearings in January and the hearings in June, at no time did he say, Judge, strike the language of the November 27 order. That's never been an issue. I'm sorry. I'm sorry to cut you off. That November 27 order, what was in there, was not also reflected in the release? It does, because the November 27 order says the counter-claim is preserved. The release releases the Schlappys, I'm sorry, releases Debra Schlappy, and also says the counter-claim is preserved. That's in the release. The releases that Gary Schlappy, Michaela Schlappy, and Abigail Schlappy signed names Debra Schlappy as the release party. Now we hear, I didn't review the release, I didn't review the order. At no time did he go back and say, let's clarify the order. The issue with Kelsey Longfellow, it is in my brief that we are not pursuing Kelsey Longfellow's contribution claim. It is in my brief. Page 10. Opening brief. Yes, opening brief, correct. But was that represented in the trial below? Well, once we had the agreements, those representing the agreements, we knew that Kelsey Longfellow did not want to release Debra Schlappy as a counter-defendant. And we accepted that. And we paid that amount. She signed a release not releasing Debra Schlappy. The other release you originally tendered to the Longfellows, though, did have a release of Debra Schlappy. Absolutely correct, Your Honor. The original release that we tendered to the Longfellows did have a release of Debra Schlappy. After further negotiations, we agreed to pay that amount without releasing Debra Schlappy. We were okay with just contribution on behalf of the three remaining Schlappys. The other issue is, I prepared a bystanders report on what happened at the pre-customer conference. At no time did counsel prepare a different bystanders report or object to the bystanders report or say that it was inconsistent to the bystanders report. It's not in his brief. It's also interesting that you Did the trial court accept that bystanders? I submitted it, and it's part of the record. Well, doesn't the trial court have to approve it? Well, it was never signed. Judge McKenna at that point Well, you must have recollection. Is it your recollection that the trial judge approved the bystanders? I was never submitted to Judge McKenna for review. So it's not a bystanders report? It's in the record, but, yeah, it was never approved because It's your opinion. It's my, right, it's my report. The other issue is the Schlappys, Gary Schlappy, Mikayla Schlappy, and Abigail Schlappy, never sued Debra Schlappy. So when counsel says I had an agreement to settle right after the pretrial, settle what? They had no open claims against her, against Gary did. I'm sorry? Didn't Gary? Gary never sued his wife. Gary had no lawsuit. The kids had no lawsuit against his wife. What is counsel settling? And the subsequent settlement, I cite in my case law on page 29 of my brief, my opening brief, you cannot have a subsequent settlement. The case I cite to says you can't. You can't have one settlement and then change your mind and go settle something else. That's clearly my brief, not addressed in his response brief. So then since she was not sued by anyone in her family, the contribution claim against her that you were looking to was for Longfell. No, no. The contribution ‑‑ I brought in Debra Schlappy for contribution against her family members. So I, at the beginning, it was always my position that my claim for contribution against Debra Schlappy was for the injuries of her passengers. Because she was the driver of the vehicle. So I sued Debra Schlappy on a counterclaim against her for the injuries of all the passengers. Because they had all sued you. They all sued me, that's correct. Thank you. All right, both of you, thank you very much for your argument. It was fascinating this morning. And we are adjourned until our next argument at 9.40. If it's all right, thank you.